UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHRISTOPHER HARRIS,

    Plaintiff,

v.                                          Case No. 8:05-cv-2011-T24-TBM

VOYAGER INDEMNITY INSURANCE
COMPANY,

    Defendant.
_____/

**ORDER**

This matter arises out of a claim for insurance benefits pursuant to a homeowner's insurance policy issued by Defendant Voyager Indemnity Insurance Company to Plaintiff Christopher Harris. Before the Court is Defendant's Motion for Summary Judgment in which it argues that the damage to Plaintiff's home is not covered by the insurance policy at issue, and therefore, Plaintiff is not entitled to the insurance benefits he is claiming. (Doc. No. 14.) Plaintiff opposes this motion arguing that genuine issues of material fact remain as to the extent of damages and costs to which he is entitled under the policy. (Doc. No. 17.) For the reasons stated herein, Defendant's motion is granted.

**I.**      **Facts and Procedural History**

Plaintiff owned and lived in a mobile home located at 2806 Lampp Road, Plant City, Florida, 33565. (Pl.'s dep., p.41; Doc. 14, Ex.A.) Defendant issued Plaintiff a homeowner's insurance policy that insured Plaintiff's mobile home from July 19, 2002 to July 19, 2005. (Doc. No. 14, Ex.A.) The mobile home was located approximately two-and-one-half feet above the

ground and rested upon concrete blocks sitting on top of clay pads on the ground. (Pl.'s dep., p.40.) The concrete blocks were placed approximately every ten square feet. (*Id.* at 40-41.)

In August 2004, Plaintiff discovered that the front and back doors of his mobile home were difficult to close and that he could not dead bolt the front door. (*Id.* at 50.) In September 2004, Plaintiff reported this damage to Defendant and filed a claim for insurance benefits under his policy.

Sometime in September 2004, an insurance adjuster for Defendant, Mr. Paul White, conducted an initial inspection of the home and discovered damage to the walls and doors. (Doc. No. 14, Exs. C, D.) By letter dated September 23, 2004, Defendant notified Plaintiff that the total damages to the home did not exceed the insurance policy deductible of $500.00. (Doc. No. 14, Ex.D.) Attached to this letter was a Building Estimate that White prepared in which he estimated that the value of the repairs to the home totaled $457.08. (Doc. No. 14, Ex.C.) Defendant's letter also stated that, because Plaintiff's description of the loss to his home indicated possible sinkhole activity, Defendant would send Plaintiff a check in the amount of $1,000 for emergency removal. (Doc. No. 14, Ex.D.) Finally, in this letter, Defendant advised Plaintiff that there was no mold found at the inspection, but if mold was found, it would not be covered by the insurance policy. (*Id.*)

In October 2004, Defendant retained Rimkus Consulting Group, Inc. ("Rimkus") to perform an investigation of the property and to determine the cause of the damage to the interior and exterior of Plaintiff's home. (Doc. No. 14, Ex.E.) On December 15, 2004, Rimkus issued a report of its findings. (*Id.*) Rimkus concluded that "sinkhole activity was evidenced and may be

2

a contributing cause of damage to the structure in accordance with Florida State Statute 627.707, Minimum Standards for Investigation of Sinkhole Claims by Insurers." (*Id.*)

On September 19, 2005, Plaintiff filed a one-count breach of contract complaint against Defendant, alleging that Defendant failed to pay him insurance benefits to which he was entitled under the policy. (Doc. No. 2.) Specifically, Plaintiff alleges that the policy covers damages to his home caused by sinkhole activity and that Defendant is violating the policy by refusing to provide coverage for those damages. (*Id.*)

## II.     Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A moving party discharges its burden on a motion for summary judgment by "showing" or "pointing out" to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325, 106 S. Ct. at 2554. Rule 56 permits the moving party to discharge its burden with or without supporting affidavits and to move for summary judgment on the case as a whole or on any claim. *See id.* When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing there is a genuine issue for trial. *Id.* at 324, 106 S. Ct. at 2553.

In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the Court must draw inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. *Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988). Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion. *Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988) (per curiam). A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

**III.   Discussion**

Defendant argues that it is entitled to summary judgment because the unambiguous terms of the insurance policy specifically limit coverage to "direct physical losses" to the mobile home, which excludes coverage for stabilization or remediation of the subsurface conditions of the home. In addition, Defendant argues that, to the extent Plaintiff is seeking coverage for mold damage that resulted from sinkhole activity, summary judgment is appropriate because the policy explicitly excludes coverage of such damage.

In response, Plaintiff states that he "is not seeking to stabilize the soils[;] . . . [r]ather, he is seeking to repair and stabilize the foundation of his home . . . [which] can only be accomplished by a number of subsurface foundation support systems and/or foundation repairs." Plaintiff argues that Defendant is required to pay the cost of repairing "direct physical losses" to

the damaged "property," which includes not only cosmetic damages to the property, but also damage to the subsurface foundation support systems. In support of this position, Plaintiff notes that Defendant's own expert engineers recommended using underground remediation to repair and stabilize the foundation of his home. Furthermore, Plaintiff argues that to interpret an insurance policy to cover only cosmetic damages to the home, but not to cover subsurface foundation repair and stabilization, would be contrary to public policy because such an interpretation would not cover restoration of the home to its pre-loss condition. Finally, Plaintiff argues that, at the very least, the policy is ambiguous, and therefore should be construed in his favor, because the terms "actual physical damage" and "property"–terms that are used within the definition of "direct physical loss"–are not defined.

Under Florida law, "the construction of an insurance policy is a question of law for the court." *Jones v. Utica Mut. Ins. Co.*, 463 So. 2d 1153, 1157 (Fla. 1985). "[I]nsurance contracts must be construed in accordance with the plain language of the policy." *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003). "If the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the [other] limiting coverage, the insurance policy is considered ambiguous," and such ambiguities are "construed in favor of the insured and strictly against the drafter." *Id.* (citations and quotations omitted). However, it is "only when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction" that the ambiguity must be construed in favor of the insured. *State Farm Mut. Ins. Co. v. Pridgen*, 498 So. 2d 1245, 1248 (Fla. 1986). The court is not permitted "to rewrite contracts, add meaning that is not present, or

otherwise reach results contrary to the intentions of the parties." *Id.* (citations and quotations omitted).

To determine whether Defendant is obligated to provide coverage for the damage to Plaintiff's subsurface foundation, or any mold damage resulting from sinkhole activity, the Court must interpret the provisions of the insurance policy relating to sinkhole activity. Specifically with regard to "Sinkhole Collapse Coverage," the policy states the following:

> We will insure for risk of direct physical losses by Sinkhole Collapse to the covered:
>
> a. Mobile home;
>
> b. Adjacent structures, if the additional insured buys Comprehensive Adjacent Structures Coverage; and
>
> c. Personal effects, if the additional insured buys Comprehensive Personal Effects Coverage.
>
> Direct physical loss by "Sinkhole Collapse" shall mean only actual physical damage to the additional insured's property covered under the additional insured's certificate arising out of, or caused by sudden settlement or collapse of the earth supporting the additional insured's property and only when such settlement or collapse results from subterranean voids created by the action of water on limestone or similar rock formations.

(Doc. No. 14, Ex.A, p.6.) Furthermore, with regard to damage to the mobile home caused by mold, the policy specifically states the following:

> Notwithstanding any other provision in this master policy/certificate, there is no coverage for the following:
>
> Any loss or damage to your and/or the additional insured's mobile home involving in any way the actual or potential presence of mold, mildew or other fungi and their secretions of any kind whatsoever, whether occurring independently or if directly or indirectly caused by or resulting from an Insured Peril.

> We will not pay for any loss, cost or expense that you may incur in testing for, monitoring, removing, treating, or in any way responding to the actual, potential, alleged or threatened presence of mold, mildew or fungi of any kind whatsoever. We do not cover any loss consisting of, caused by, or contributed to, or aggravated by mold, mildew or fungi.

(Doc. No. 14, Ex.A, "Exclusion of Mold, Mildew and Other Fungi Endorsement.")

Interpreting the plain language of the policy, the Court finds that the policy does not provide coverage to Plaintiff for subsurface foundation repair and stabilization due to damages caused by sinkhole activity. The Court rejects Plaintiff's blanket contention that the policy is ambiguous because the terms "actual physical damage" and "property" are not defined. "The lack of a definition of an operative term in a policy does not necessarily render the term ambiguous and in need of interpretation by the courts." *Swire Pac. Holdings, Inc.*, 845 So. 2d at 166 (quotations and citations omitted). Plaintiff has failed to provide any support for its contention that an ambiguity exists, nor has he provided any conflicting definitions for these terms, but instead broadly relies on the statement that Defendant's failure to define the terms requires the Court to interpret the terms in his favor. *See id.*

The "Sinkhole Collapse Coverage" provision of the insurance policy is not ambiguous. That provision explicitly provides that Defendant will insure "direct physical losses" to Plaintiff's "[m]obile home." "Direct physical loss[es]" include only "actual physical damage" to Plaintiff's "property" covered under the policy. Here, the property covered under the policy is Plaintiff's mobile home only, which does not include any subsurface foundation or conditions of the mobile home. Plaintiff has not shown that there is any genuine issue regarding whether coverage for "direct physical loss" includes coverage for stabilization or remediation of the subsurface foundation of Plaintiff's home. Moreover, the Court is unpersuaded by Plaintiff's

generalized assertion that Defendant's interpretation of the policy violates public policy because it is not supported by any factual or legal authority. Accordingly, Defendant is entitled to summary judgment as to this portion of Plaintiff's breach of contract claim.

To the extent Plaintiff is claiming coverage for mold damage that resulted from displacement of the home due to sinkhole activity, such coverage is explicitly excluded from the policy. In unambiguous terms, the policy states that "there is no coverage for . . . [a]ny loss or damage to your . . . mobile home involving in any way the actual or potential presence of mold . . . whether occurring independently or if directly or indirectly caused by or resulting from an Insured Peril." (Doc. No. 14, Ex.A.) Plaintiff has not raised an issue of fact regarding whether he is entitled to any coverage related to mold damage resulting from sinkhole activity, and therefore, Defendant is entitled to summary judgment as to this portion of Plaintiff's breach of contract claim.

## IV.  Conclusion

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment (Doc. No. 14) is granted in its entirety. As there are no remaining claims before the Court, the pretrial conference set in this case for Thursday, January 11, 2007, is hereby cancelled. The Clerk is directed to enter judgment in favor of Defendant Voyager Indemnity Insurance Company and to close this case.

**DONE AND ORDERED** at Tampa, Florida, this 4th day of January, 2007.

Copies to:
Counsel of Record

SUSAN C. BUCKLEW
United States District Judge